PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-4444

_____

DAVID OPALINSKI;
JAMES MCCABE, on behalf of themselves
and all others similarly situated

v.

ROBERT HALF INTERNATIONAL INC;
ROBERT HALF CORPORATION;

Appellants

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-10-cv-02069)
District Judge: Honorable Faith S. Hochberg

_____

Argued April 7, 2014

Before:  AMBRO, JORDAN, and ROTH, <u>Circuit Judges</u>

(Opinion filed: July 30, 2014)

Richard L. Alfred, Esquire  (Argued)
Patrick J. Bannon, III, Esquire
Carla J. Easton, Esquire
James M. Hlawek, Esquire
Seyfarth Shaw LLP
Two Seaport Lane
World Trade Center East, Suite 300
Boston, MA   02210

Christopher H. Lowe, Esquire
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY   10018

James M. Harris, Esquire
Seyfarth Shaw LLP
2029 Century Park East, Suite 3500
Los Angeles, CA   90067

Adam N. Saravay, Esquire
McCarter & English
100 Mulberry Street
Four Gateway Center, 14th Floor
Newark, NJ  07102

Alexander Wood, Esquire
Paul Hastings
75 East 55th Street
New York, NY   10022

　　　Counsel for Appellants

2

Shannon Liss-Riordan, Esquire   (Argued)
Lichten & Liss-Riordan, P.C.
100 Cambridge Street, 20th Floor
Boston, MA  02114

Anthony L. Marchetti, Jr., Esquire
Marchetti Law, P.C.
900 North Kings Highway
Cherry Hill, NJ   08034

     Counsel for Appellees

_____

OPINION  OF  THE  COURT
_____

AMBRO, <u>Circuit Judge</u>

We consider whether a district court, rather than an arbitrator, should decide if an agreement to arbitrate disputes between the parties to that agreement also authorizes classwide arbitration.  Because of the fundamental differences between classwide and individual arbitration, and the consequences of proceeding with one rather than the other, we hold that the availability of classwide arbitration is a substantive "question of arbitrability" to be decided by a court absent clear agreement otherwise.

## I.     Background

Plaintiffs David Opalinski and James McCabe (sometimes collectively referred to as "Appellees"), former employees of Robert Half International, Inc. ("RHI"), bring this action on behalf of themselves and other individuals,

alleging that RHI failed to pay them overtime and improperly classified them as overtime-exempt employees in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Both McCabe and Opalinski signed employment agreements that contained arbitration provisions. They provide that "[a]ny dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement" shall be submitted to arbitration. Neither agreement mentions classwide arbitration.

RHI moved to compel arbitration of Opalinski and McCabe's claims on an individual basis. In October 2011, the District Court granted the motion in part, thus compelling arbitration but holding that the propriety of individual (also known as bilateral) versus classwide arbitration was for the arbitrator to decide (the "October 2011 Order"). The Court subsequently entered an order terminating the case. Rather than immediately appealing the October 2011 Order, RHI proceeded with the arbitration process and did not return to the District Court until the arbitrator issued a partial award and ruled that the employment agreements permitted classwide arbitration. RHI then moved the District Court to vacate the arbitrator's partial award. The District Court denied the motion to vacate (the "December 2012 Order").

RHI appeals the December 2012 Order. The crux of the appeal, however, is not the underlying issue whether the employment agreements between the parties permit classwide as opposed to only bilateral arbitration. Rather, the question before us is who decides – that is, should the availability of classwide arbitration have been decided by the arbitrator or by the District Court?

4

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction over this action per 28 U.S.C. § 1331 because Plaintiffs brought claims under the FLSA. We have jurisdiction under 9 U.S.C. § 16(a)(1)(D) ("An appeal may be taken from . . . an order . . . confirming or denying confirmation of an award or partial award[.]").

Appellees argue that this appeal is untimely because although RHI styles it as one based on the District Court's December 2012 Order denying its motion to vacate, the appeal actually challenges only the October 2011 Order's holding that the availability of classwide arbitration is a question for the arbitrator. The October 2011 Order, Appellees contend, was a final decision that was immediately appealable on an interlocutory basis, and RHI's attempt now to appeal the merits of that decision is untimely. *See* Fed. R. App. P. 4(a)(1)(A) (party seeking to appeal a final decision must file notice of appeal within 30 days of entry of the judgment or order appealed from).

The Federal Arbitration Act "preserves immediate appeal of any 'final decision with respect to an arbitration,' . . . whether the decision is favorable or hostile to arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (quoting 9 U.S.C. § 16(a)(3)). A "final decision" is one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Id.* (quotation marks and citation omitted). Here the October 2011 Order was not a final decision because it effected only a non-final, administrative closure, and explicitly acknowledged the potential need for further litigation before the District Court. *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 247 (3d Cir. 2013) ("administrative closings are not final orders"). RHI timely appealed the District

5

Court's final decision – the December 2012 Order – and we have jurisdiction to consider this appeal.

"On appeal from a district court's ruling on a motion to confirm or vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012), *aff'd*, 133 S. Ct. 2064 (2013).

## III. Discussion

We decide first what arguments we may properly consider on this appeal. Appellees contend that because RHI did not argue in its Motion to Vacate that the District Court (and not the arbitrator) should have determined the permissibility of classwide arbitration, it has waived its right to raise that argument in this appeal. However, waiver, which is intended to protect litigants from unfair surprise and prevent district courts from being reversed on grounds that were never argued before them, does not apply in this instance. Appellees were well aware of RHI's argument that the District Court, not the arbitrator, should decide the availability of classwide arbitration: the Court expressly addressed the issue in its October 2011 Order, RHI objected to the arbitrator's determination whether classwide arbitration was permissible throughout the arbitration proceedings, and RHI did flag the "who decides" issue in its Motion to Vacate by reminding the Court that "from the outset [RHI] has maintained that the class action issue is for *this Court* to decide." Thus, our addressing the issue on appeal prejudices neither Appellees nor the District Court.

We proceed to the merits of the case and consider whether, in the context of an otherwise silent contract, the availability of classwide arbitration is to be decided by a court rather than an arbitrator. The analysis is twofold. We decide

6

first whether the availability of classwide arbitration is a "question of arbitrability." *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks and citation omitted). If yes, it is presumed that the issue is "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Id.* (internal quotation marks, citations, and alteration omitted). If the availability of classwide arbitration is *not* a "question of arbitrability," it is presumptively for the arbitrator to resolve. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1994).

### A.  Is the availability of classwide arbitration a "question of arbitrability"?

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. at 83 (internal quotation marks and citation omitted). While federal policy favors arbitration agreements, an arbitrator has the power to decide an issue only if the parties have authorized the arbitrator to do so. Because parties frequently disagree whether a particular dispute is arbitrable, courts play a limited threshold role in determining "whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*[.]'" *Id.* at 83 (emphasis in original).

"Questions of arbitrability" are limited to a narrow range of gateway issues. They may include, for example, "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* at 84. On the other hand, questions that the parties would likely expect the arbitrator to decide are not "questions of arbitrability." *Id.* Those include "'procedural' questions that grow out of the dispute and bear on its final disposition[,]" as

7

well as allegations of waiver, delay, or similar defenses to arbitrability.  *Id.*

The Supreme Court has not yet decided whether the availability of class arbitration is a "question of arbitrability." In *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), a plurality of the Court concluded that the availability of classwide arbitration was *not* a question of arbitrability because "it concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties . . . [, but only] contract interpretation and arbitration procedures."  *Id.* at 451, 452-53.

Subsequent Supreme Court decisions, however, cast doubt on the *Bazzle* plurality's decision.  In *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), the Court specifically noted that "only the plurality" in *Bazzle* decided that an arbitrator should determine whether a contract permits classwide arbitration and *Bazzle* is accordingly not binding on this point.  *Id.* at 680.  And in *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013), the Court again stated that it "has not yet decided whether the availability of class arbitration" is for a court or for an arbitrator to resolve. *Id.* at 2069 n.2.

Our Court has also not decided whether the availability of classwide arbitration is a question of arbitrability.  We briefly addressed the issue in *Quilloin v. Tenett HealthSys. Philadelphia, Inc.*, 673 F.3d 221 (3d Cir. 2012), where we concluded that classwide arbitration was *not* a question of arbitrability.  *Id.* at 232 ("Silence regarding class arbitration generally indicates a prohibition against class arbitration, but the actual determination as to whether class action is prohibited is a question of interpretation and procedure for the arbitrator.").  However, this single sentence addressing "who decides" is a *dictum* because at the district court level the

8

parties in *Quilloin* had already agreed that the arbitrator should be the one to determine whether the contract provided for class action arbitration. *See Quilloin v. Tenett HealthSys. Philadelphia, Inc.*, 763 F. Supp. 2d 707, 727 n.22 (E.D. Pa. 2011). Additionally, *Quilloin* relied solely on the Supreme Court's decision in *Stolt-Nielsen* for its conclusion that the availability of class arbitration is a question of procedure for the arbitrator to decide. *See* 673 F.3d at 232. This reliance falls short: not only does *Stolt-Nielsen* expressly state that the Supreme Court has not yet resolved the "who decides" issue but, as explained below, the opinion also indicates that the availability of classwide arbitration is a question of substance rather than procedure. Thus, whether the availability of classwide arbitration is a "question of arbitrability" to be presumptively decided by a court remains an open question.

Our Court has explained that questions of arbitrability generally fall into two categories – (1) when the parties dispute "whether [they] have a valid arbitration agreement at all" (whose claims the arbitrator may adjudicate); and (2) "when the parties are in dispute as to whether a concededly binding arbitration clause applies to a certain type of controversy" (what types of controversies the arbitrator may decide). *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (en banc) (internal quotation marks and citation omitted). The crucial consideration is the expectation of the contracting parties: We do not "forc[e] parties to arbitrate a matter that they may well not have agreed to arbitrate." *Howsam*, 537 U.S. at 83. We now hold that whether an agreement provides for classwide arbitration is a "question of arbitrability" to be decided by the District Court.

*1.        The availability of class arbitration implicates whose claims the arbitrator may resolve.*

The Supreme Court has long recognized that a district court must determine whose claims an arbitrator is authorized to decide.  In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964), the defending company claimed it was not bound by the arbitration provisions of an agreement signed by a company with which it had merged.  *Id.* at 546-47.  The Court stated that there was "no doubt" that the issue "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court . . . ." *Id.* at 546-47 (internal quotation marks and citations omitted). Similarly, in *First Options* individual business owners argued that they were not personally bound by an arbitration agreement they had signed on behalf of their wholly owned company.  *See* 514 U.S. at 941-42.  The Court again concluded that this was a "question of arbitrability" to be presumptively determined by a court absent clear contractual language to the contrary.  *Id.* at 946-47.  Our Circuit has also held repeatedly that whose claims an arbitrator may decide is an issue for the courts.  *See, e.g., Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 169 (3d Cir. 2009) ("[w]hether the arbitrator's award binds [a third-party] is a question that the court must decide"); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000) (determining "whether Huep's signature bound Advent" was "a necessary prerequisite to the court's fulfilling its role of determining whether the dispute is one for an arbitrator to decide").

Here, based on the agreement to arbitrate with Opalinski and McCabe, RHI moved to compel bilateral arbitration with each of them.  By seeking classwide arbitration, however, Opalinski and McCabe contend that their arbitration agreements empower the arbitrator to resolve not only their personal claims but the claims of additional

10

individuals not currently parties to this action. The determination whether RHI must include absent individuals in its arbitrations with Opalinski or McCabe affects whose claims may be arbitrated and is thus a question of arbitrability to be decided by the court. *See Stolt-Nielsen*, 559 U.S. at 683 ("parties may specify *with whom* they choose to arbitrate their disputes" (emphasis in original)); *id.* at 686 (in classwide arbitration, the arbitrator "no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties"). Additionally, as Justice Alito warned in his concurrence in *Oxford Health*, courts should be wary of concluding that the availability of classwide arbitration is for the arbitrator to decide, as that decision implicates the rights of absent class members without their consent. 133 S. Ct. at 2071-72 (Alito, J., concurring) ("at least where absent class members have not been required to *opt in*, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used" (emphasis in original)).

### 2.    The availability of classwide arbitration implicates the type of controversy submitted to arbitration.

The availability of classwide arbitration is a "question of arbitrability" for a second, independent reason – it concerns "whether a concededly binding arbitration clause applies to a certain type of controversy." *Puleo*, 605 F.3d at 178 (internal quotation marks and citation omitted); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*[.]" (emphasis in original)).

11

Opalinski and McCabe argue that, because class actions in the context of traditional litigation are a procedural construct, the availability of classwide arbitration is also a procedural question. In *Stolt-Nielsen*, however, the Supreme Court expressly disclaimed classwide arbitration as simply procedural. 559 U.S. at 687 (the differences between class and individual arbitration cannot be characterized as a question of "merely what 'procedural mode' [i]s available to present [a party's] claims"). The Court stated that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id.* at 685. To further the point, it continued on to explain the numerous differences between bilateral and class arbitration, notably that

> [(1) a]n arbitrator . . . no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties . . . [; (2)] the presumption of privacy and confidentiality that applies in many bilateral arbitrations [does] not apply in class arbitrations[,] thus potentially frustrating the parties' assumptions when they agreed to arbitrate[; (3) t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well[; and (4)] the commercial stakes of class-action arbitration are comparable to those of class-action litigation, even though the scope of judicial review is much more limited.

*Id.* at 686-87 (internal quotation marks and citations omitted). In *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740

(2011), the Court similarly emphasized that the "changes brought about by the shift from bilateral arbitration to class-action arbitration are fundamental," concluding that "[a]rbitration is poorly suited to the higher stakes of class litigation" and that classwide arbitration "*is not arbitration as envisioned by the FAA.*" *Id.* at 1750, 1751-53 (internal quotation marks and citations omitted) (emphasis added).

Accordingly, we read the Supreme Court as characterizing the permissibility of classwide arbitration not solely as a question of procedure or contract interpretation but as a substantive gateway dispute qualitatively separate from deciding an individual quarrel. Traditional individual arbitration and class arbitration are so distinct that a choice between the two goes, we believe, to the very type of controversy to be resolved. We turn below to the support our Sixth Circuit colleagues give to this conclusion.

### 3. *Other Circuits*

The only other Circuit Court of Appeals to have squarely resolved the "who decides" issue is the Sixth, which has also held that "whether an arbitration agreement permits classwide arbitration is a gateway matter" that is presumptively "for judicial determination[.]" *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) (internal quotation marks and citation omitted). Citing to *Concepcion*, *Oxford Health*, and *Stolt-Nielsen*, the Sixth Circuit Court reviewed the differences between classwide and bilateral arbitration and noted that "recently the [Supreme] Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one." *Id.* at 598. Specifically, the Sixth Circuit reasoned that

13

> [g]ateway questions are fundamental to the manner in which the parties will resolve their dispute – whereas subsidiary questions, by comparison, concern details. And whether the parties arbitrate one claim or 1,000 in a single proceeding is no mere detail. Unlike the question whether, say, one party to an arbitration agreement has waived his claim against the other – which of course is a subsidiary question – the question whether the parties agreed to classwide arbitration is vastly more consequential than even the gateway question whether they agreed to arbitrate bilaterally. An incorrect answer in favor of classwide arbitration would "forc[e] parties to arbitrate" not merely a single "matter that they may well not have agreed to arbitrate" but thousands of them.

*Id.* at 598-99 (second alteration in original) (internal citation omitted) (quoting *Howsam*, 537 U.S. at 84). This analysis is persuasive and guides our own.

Appellees argue that the First, Second and Eleventh Circuits have also considered the "who decides" question and have concluded that the availability of classwide arbitration is not a question of arbitrability for the court but rather a question of procedure for the arbitrator to decide. *See S. Commc'ns Servs., Inc. v. Thomas*, 720 F.3d 1352 (11th Cir. 2013); *Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd.*, 683 F.3d 18 (1st Cir. 2012)*; Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2d Cir. 2011). This is untrue, as none of those Circuits ruled, or even expressed a view, on the issue before us. The First Circuit's decision in *Fantastic Sams* involved associational arbitration, not class arbitration, and expressly recognized that an "associational action . . . is [not] equivalent

14

to a class action." 683 F.3d at 23. In *Jock*, the Second Circuit noted repeatedly that the parties had submitted the question whether their contract allowed for classwide arbitration to the arbitrator, and so the "who decides" question was not before the Court. *See* 646 F.3d at 116, 124. And far from holding that the availability of classwide arbitration is for the arbitrator to decide, the Eleventh Circuit has specifically stated that the question remains unresolved. *See S. Commc'ns Servs.*, 720 F.3d at 1359 n.6 ("Like the Supreme Court, we also have not decided whether the availability of class arbitration is a question of arbitrability[.]").

Since *Bazzle*, the Supreme Court has not directly decided whether the availability of class arbitration is a question of arbitrability. The Court's line of post-*Bazzle* opinions, however, indicates that, because of the fundamental differences between classwide and bilateral arbitration, and the consequences of proceeding with one rather than the other, the availability of classwide arbitrability is a substantive gateway question rather than a procedural one. We thus join the Sixth Circuit Court of Appeals in holding that the availability of class arbitration is a "question of arbitrability."

**B.    There is no evidence rebutting the presumption that the District Court should decide all questions of arbitrability.**

It is presumed that courts must decide questions of arbitrability "unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (internal quotation marks and citation omitted). The burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator. *See Major League Umpires*

15

*Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 280-81 (3d Cir. 2004). Silence or ambiguous contractual language is insufficient to rebut the presumption. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 154-55 (3d Cir. 2001). Here, Opalinski and McCabe's employment agreements provide for arbitration of any dispute or claim arising out of or relating to their employment but are silent as to the availability of classwide arbitration or whether the question should be submitted to the arbitrator. Nothing else in the agreements or record suggests that the parties agreed to submit questions of arbitrability to the arbitrator. Thus, the strong presumption favoring judicial resolution of questions of arbitrability is not undone, and the District Court had to decide whether the arbitration agreements permitted classwide arbitration.

The District Court's October 2011 Order directing the arbitrator to decide the availability of classwide arbitration, and December 2012 Order denying RHI's motion to vacate the arbitrator's partial final award, are reversed. This case is remanded for the District Court to determine whether Appellees' employment agreements call for classwide arbitration.

\* \* \* \* \*

"Arbitration is fundamentally a creature of contract, and an arbitrator's authority is derived from an agreement to arbitrate." *Puleo*, 605 F.3d at 194 (alteration in original) (internal quotation marks and citation omitted). Here, where we have an agreement to arbitrate individual disputes and no mention of arbitration for a wider group, we believe the parties would have expected a court, not an arbitrator, to determine the availability of class arbitration. This is especially so given the critical differences between individual and class arbitration and the significant consequences of that determination for both whose claims are subject to arbitration

16

and the type of controversy to be arbitrated. Hence we hold that the availability of class arbitration is a "question of arbitrability" for a court to decide unless the parties unmistakably provide otherwise.