NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2888
_____

JOSE IVAN VILCHES;
FRANCIS X SHEEHAN, JR.;
JACK COSTEIRA, Individually, and on
Behalf of All Others Similarly Situated,
                                        Appellants

v.

THE TRAVELERS COMPANIES, INC;
TRAVELERS OF NEW JERSEY;
TRAVELERS AUTO INS CO OF NEW JERSEY;
FIRST TRENTON INDEMNITY CO.
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-09-cv-04630)
District Judge: Honorable Katharine S. Hayden
_____

Argued January 11, 2011

Before:  RENDELL, AMBRO and FISHER, <u>Circuit</u> <u>Judges</u>.

(Opinion Filed: February 9, 2011)
_____


Jonathan I. Nirenberg, Esq.
Resnick & Nirenberg
100 Eagle Rock Avenue
Suite 301
East Hanover, NJ  07936

James B. Zouras, Esq.    **[ARGUED]**
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
  *Counsel for Appellants*

Michael T. Grosso, Esq.
William P. McLane, Esq.
Andrew J. Voss, Esq.    **[ARGUED]**
Littler Mendelson
One Gateway Center
8th Floor
Newark, NJ 07102
  *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

This appeal calls upon us to decide whether the District Court properly granted summary judgment to Appellee The Travelers Companies, Inc. ("Travelers"), in concluding that Appellants Vilches, Sheehan, and Costeira (collectively, "Vilches") assented to the insertion of a class arbitration waiver into an existing arbitration policy, and that the waiver was not unconscionable. The District Court ordered the parties into arbitration to individually resolve the claims brought by Vilches under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and New Jersey Wage and Hour Law, N.J.S.A. § 34:11-4.1, *et seq.* ("NJWHL"). While we will find that the class arbitration waiver is not unconscionable, we will vacate the District Court's order and refer the matter to arbitration to determine whether Vilches can proceed as a class based upon the parties' agreements.

2

Factual & Procedural Background

We briefly summarize the allegations pertinent to our decision. Appellants Vilches filed a class and collective action in the Superior Court of New Jersey to recover unpaid wages and overtime allegedly withheld in violation of the FLSA and the NJWHL, contending that Travelers consistently required its insurance appraisers to work beyond 40 hours per week but failed to properly compensate the appraisers for the additional labor. Travelers removed the matter to the United States District Court for the District of New Jersey, and filed a Motion for Summary Judgment seeking the dismissal of the complaint and an order compelling Vilches to arbitrate their individual wage and hour claims.

Upon commencing employment with Travelers, Vilches agreed to an employment provision making arbitration "the required, and exclusive, forum for the resolution of all employment disputes that may arise" pursuant to an enumerated list of federal statutes, and under "any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment."[1] (App'x at 79.) The agreement did not expressly reference class or collective arbitration or any waiver of the same. The agreement reserved to Travelers the right to alter or amend the arbitration policy at its discretion with appropriate notice to employees.

---

[1] Vilches accepted employment on July 26, 2004, and was discharged in January 15, 2009. Costeira entered employment on January 23, 2003, and was terminated on February 26, 2009. Sheehan began working on October 13, 1994, and was terminated on December 9, 2008.

In April 2005, Travelers electronically published a revised Arbitration Policy. In addition to restating the expansive scope of the Policy, the update also included an express statement prohibiting arbitration through class or collective action:

> The Policy makes arbitration the required and exclusive forum for the resolution of all employment-related and compensation-related disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise between an employee or former employee and the Company. . . . [*T*]*here will be no right or authority for any dispute to be brought, heard or arbitrated under this Policy as a class or collective action, private attorney general, or in a representative capacity on behalf of any person.*

(App'x at 88) (emphasis added). Travelers communicated the revised Policy to Vilches in several electronic communications.[2]

Before the District Court, Vilches initially alleged that they never agreed to arbitrate any claims against Travelers; their position changed, however, during the course of proceedings and they ultimately conceded that all employment disputes with Travelers must be arbitrated pursuant to the arbitration agreement they signed at commencement of

---

[2] First, Travelers sent an e-mail to all employees on April 1, 2005, titled "Internal dispute resolution/arbitration program," which announced important changes to the existing dispute resolution procedures, and included a link to the revised arbitration policy. The email expressly stated that the arbitration policy was an essential element and condition of continued employment. Second, Travelers required Vilches to annually view and complete an online ethics quiz, which required employees to certify that they would abide by "key obligations" of employment, including the Arbitration Policy. Certification signified that the employee received, read, and understood both the content and the location of the policies, and agreed to abide by the terms therein. Finally, Travelers sent an e-mail to Vilches on December 31, 2007, asking them to review specified updated policies – including the updated Arbitration Policy – and to acknowledge receipt, review, and agreement to the documents by clicking on a link embedded in the e-mail. Vilches do not contest that they opened, viewed, and clicked on the embedded links, nor do they dispute that Appellants annually certified their completion of an agreement to the online ethics quizzes.

4

employment. They nevertheless insisted that the revised Arbitration Policy introduced by Travelers in April 2005 prohibiting class arbitration, which Travelers attempted to enforce, did not bind them because they never assented to its terms. Vilches further argued that, even assuming that the updated Policy did bind them, the revision was unconscionable and unenforceable.

Notwithstanding the fact that the parties agreed to arbitrate all employment disputes, as we discuss below, the District Court addressed the question of whether Vilches agreed to waive the right to proceed by way of class arbitration. In an oral decision, the District Court granted Travelers' motion for summary judgment, finding that the various forms of correspondence from Travelers provided sufficient notice to Vilches of the revised Policy, and that their electronic assent and continued employment constituted agreement to the update. As such, the Court held that Vilches waived the ability to proceed in a representative capacity through class arbitration. The Court's opinion only briefly touched upon the unconscionability claims, stating that "there was no adhesion that was part of that process." (App'x at 23.) The Court ordered the parties to individually arbitrate the employment disputes, and this appeal followed.

Jurisdiction and Standard of Review

The District Court exercised jurisdiction over Vilches's complaint pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291 from the District Court's grant of summary judgment to Travelers.

"We exercise plenary review over questions regarding the validity and

5

enforceability of an agreement to arbitrate." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010). A court "decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment," *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (citation omitted), because the "order compelling arbitration is 'in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate,'" *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528 (3d Cir. 2009) (citation omitted). Accordingly, "[t]he party opposing arbitration is given 'the benefit of all reasonable doubts and inferences that may arise.'" *Kaneff*, 587 F.3d at 620. As with the standard for summary judgment, "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980).

Discussion

The parties agree that any and all disputes arising out of the employment relationship – including the claims asserted here – are to be resolved in binding arbitration. Accordingly, the role of the Court is limited to deciding whether the revised Arbitration Policy introduced in April 2005 – and the class arbitration waiver included within that revision – governed this dispute. We conclude that the District Court should not have decided the issue presented as to the class action waiver, and, as we explain below, we will refer the resolution of this question to arbitration in accordance with

6

governing jurisprudence. The District Court should have, however, ruled on the issue of unconscionability and we will address it.

We have repeatedly stated that courts play a limited role when a litigant moves to compel arbitration. Specifically, "'whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Puleo*, 605 F.3d at 178 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "[A] question of arbitrability arises only in two circumstances-first, when there is a threshold dispute over 'whether the parties have a valid arbitration agreement at all,' and, second, when the parties are in dispute as to 'whether a concededly binding arbitration clause applies to a certain type of controversy.'" *Id.* (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). In contrast, the Supreme Court has distinguished "questions of arbitrability with disputes over arbitration procedure, which do not bear upon the validity of an agreement to arbitrate." *Id.* at 179. We noted in *Puleo* that "procedural questions" – such as waiver or delay – "which grow out of the dispute and bear on its final disposition are presumptively not for the judge." *Id.*

This matter satisfies neither of the *Puleo* arbitrability circumstances. As stated, neither party questions "whether the parties have a valid arbitration agreement at all." *Id.*; (s*ee also* Appellants' Br. at 15 ("Plaintiffs do not challenge the validity of the arbitration agreements they entered into when they first began their employment"); Appellees' Br. at 6 ("At the outset of employment, Appellants agreed to the Travelers Employment Arbitration Policy").) The original arbitration provision to which Vilches

7

admittedly agreed provided that "the required, and exclusive, forum for the resolution of *all employment disputes*" would be arbitration. (App'x at 79 (emphasis added).) Here, the issue of whether an employee is bound by a disputed amendment to existing employment provisions falls within the scope of this expansive agreement to arbitrate. Indeed, the language makes clear that the "concededly binding arbitration clause applies" to the particular employment claims at stake here, and the parties do not advance a cognizable argument to suggest otherwise. *Puleo*, 605 F.3d at 178. Accordingly, the second *Puleo* arbitrability element is also unfulfilled.

While the parties framed their arguments so as to invite the Court's attention to the class action waiver issue – namely, whether the revised Arbitration Policy expressly prohibiting class arbitration governs the relationship between Travelers and Vilches – we conclude that "the relevant question here is what *kind of arbitration proceeding* the parties agreed to." *Bazzle*, 539 U.S. at 452 (emphasis in original). As stated, the addition of the disputed class arbitration waiver did not disturb the parties' agreement to refer "all employment disputes" to arbitration, and, thus, "does not bear upon the validity of an agreement to arbitrate." *Puleo*, 605 F.3d at 179. Assuming binding arbitration of all employment disputes, the contested waiver provision solely affects the type of procedural arbitration mechanism applicable to this dispute. "[T]he Supreme Court has made clear that questions of 'contract interpretation' aimed at discerning *whether* a particular procedural mechanism is authorized by a given arbitration agreement are matters for the arbitrator to decide." *Id.* (emphasis in original). Where contractual silence is implicated, "the arbitrator and not a court should decide whether a contract[ was] indeed 'silent' on

8

the issue of class arbitration," and "whether a contract with an arbitration clause forbids class arbitration." *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1771-72 (2010).

The Policy originally in force made no mention of class action or class arbitration, and was entirely silent on whether the parties had a right to proceed through class or collective arbitration.[3] In contrast, the amended Policy explicitly precludes class arbitration. Accordingly, we must "give effect to the contractual rights and expectations of the parties," and refer the questions of whether class arbitration was agreed upon to the arbitrator. *Stolt-Nielsen*, 130 S. Ct. at 1774.

Although we offer no forecast as to the arbitrator's potential resolution of these questions, assuming *arguendo* that the arbitrator finds the class action waiver binding, we will address Vilches' alternative argument that the addition of the class action waiver was

---

[3] Despite the parties' apparent concurrence that the original Policy's silence afforded Vilches a "right" to proceed in class arbitration, the provision's language does not actually confirm the existence of such a right. *See, e.g.*, *Champ v. Siegel Trading Co.,* 55 F.3d 269, 275 (7th Cir. 1995) ("We thus adopt the rationale of several other circuits and hold that section 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration is silent on the matter"); *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 728-29 (8th Cir. 2001) ("[B]ecause the [ ] agreements make no provision for arbitration as a class, the district court did not err by compelling appellants to submit their claims to arbitration as individuals."). Although contractual silence in the post-*Bazzle* era has often been treated by arbitrators as authorizing class arbitration, *Stolt-Nielsen* suggests a return to the pre-*Bazzle* line of reasoning on contractual silence, albeit decided by an arbitrator, because it focuses on what the parties agreed to – expressly or by implication. *See* 130 S. Ct. at 1776 ("[T]he differences between bilateral and class-action arbitration are too great for arbitrators to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings."). Although the Policy's silence here suggests that the addition of the class waiver did not deprive Vilches of the asserted "right" to class arbitration, we will refer this question to the arbitrator.

unconscionable for the sake of judicial efficiency, and because it does concern "arbitrabillity." *See Puleo*, 605 F.3d at 179.

"In stark contrast with the question of arbitration procedure" discussed above, "when a party challenges the validity of an arbitration agreement by contending that one or more of its terms is unconscionable under generally applicable state contract law, a question of arbitrability is presented." *Id.* "The Courts of Appeals are unanimous in recognizing that an unconscionability challenge to the provisions of an arbitration agreement is a question of arbitrability that is presumptively for the court, not the arbitrator, to decide." *Id.* at 180. Here, Vilches contend that the timing, language, and format of the class action waiver renders it unconscionable, even if it is binding. We disagree.

The contractual doctrine of unconscionability "involves both 'procedural' and 'substantive' elements," and "requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 277 (3d Cir. 2004). "In addressing a claim that an arbitration clause is unconscionable, we apply the 'ordinary state law principles . . . of the involved state or territory.'" *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 200 (3d Cir. 2010). New Jersey case law provides that "adhesion contracts invariably evidence some characteristics of procedural unconscionability," and "a careful fact-sensitive examination into substantive unconscionability is generally required." *Moore v. Woman to Woman Obstetrics & Gynecology, LLC*, 3 A.3d 535, 540 (N.J. Sup. App. Div. 2010)

10

(internal quotations and citation omitted).

As we recently observed, the New Jersey Supreme Court has stated that "'[t]he public interest at stake in . . . consumers['] [ability to effectively] pursue their statutory rights under consumer protection laws' constituted the 'most important' reason for holding a [ ] class-arbitration waiver unconscionable." *Homa v. Amer. Ex. Co.*, 558 F.3d 225, 230 (3d Cir. 2009) (quoting *Muhammad v. County Bank of Rehoboth Beach, De.*, 912 A.2d 88, 99-101 (N.J. 2006)). Notably, however, "class action waiver becomes 'problematic when the waiver is found in a *consumer contract of adhesion* in a setting in which disputes between the contract parties *predictably* involve small amounts of damages.'" *Id.* (citing *Muhammad*, 912 A.2d at 99) (emphasis added). Where a class action waiver is not part of a consumer contract of adhesion, New Jersey courts perceive nothing unconscionable or unfairly burdensome about an arbitration agreement. *See Delta Fund. Corp. v. Harris*, 912 A.2d 104, 115 (N.J. 2006) ("[U]nder New Jersey law, the class-arbitration waiver in [an] arbitration agreement is not unconscionable per se."). Indeed, "the affirmative policy of [New Jersey], both legislative and judicial, favors arbitration as a mechanism of resolving disputes." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 881 (N.J. 2002).

Here, the class arbitration waiver does not concern a consumer contract with predictably small damages, nor is the arbitration agreement in whole unconscionably adhesive, as "'[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.'" *Id.* at 880 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). "'[T]he

11

Supreme Court [in *Gilmer*] obviously contemplated avoidance of the arbitration clause only upon circumstances more egregious than the ordinary economic pressure faced by every employee who needs the job.'" *Id.* (citation omitted) (alterations in original). Echoing virtually every court to consider "the adhesive effect of arbitration provisions in [ ] employment agreements," *id.,* we similarly held that "[u]nequal bargaining power is not alone enough to make an agreement to arbitrate a contract of adhesion," *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 184 (3d Cir. 1998), *overruled on other grounds by Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79 (2000)). Vilches only demonstrated their position relative to Travelers and their interest in maintaining employment, which is insufficient on its own to prove that the class arbitration waiver is unreasonably favorable to Travelers. As such, we conclude that the waiver is not substantively oppressive and unconscionable.[4]

Moreover, "procedural unconscionability involves a 'variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.'" *Estate of Ruszala v. Brookdale Living Comms., Inc.*, 1 A.3d 806, 819 (N.J. Sup. App. Div. 2010) (quoting *Muhammad*, 912 A.2d at 96). Vilches failed to establish

---

[4] Vilches's policy arguments are premised on the amorphous contention that arbitration would undermine the deterrent function of the FLSA. This contention is unavailing, however, since Vilches failed to substantiate the view that arbitration will not adequately protect the financial interests of employees. Indeed, there is no "suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (citing *Johnson v. West Suburban Bank*, 225 F.3d 366, 377 (3d Cir. 2000)).

these inadequacies in this instance. Vilches were always aware of the existence of an arbitration policy that could be amended, they were sophisticated employees with significant corporate experience, and they failed to demonstrate that Travelers utilized unduly complex contract terms or engaged in oppressive bargaining tactics when introducing the revised Policy. Furthermore, Travelers provided several notices of the class arbitration amendment and requested acknowledgment and agreement to the revision on an annual basis. Moreover, Vilches presented no evidence that they could not have negotiated the terms of the arbitration agreement or found another job, as is their burden.

Accordingly, assuming that the arbitrator finds the revised Policy binding, we do not find the timing and format of the class action waiver either procedurally or substantively unconscionable.

Conclusion

For the foregoing reasons, we will vacate the District Court order, and refer the matter to arbitration to resolve whether the parties can proceed as a class in arbitration pursuant to the relevant arbitration provisions.

13