Filed 10/9/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NETWORK CAPITAL FUNDING CORPORATION, | |
| Plaintiff and Respondent, | G049172 |
| v. | (Super. Ct. No. 30-2013-00659735) |
| ERIK PAPKE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Geoffrey T. Glass, Judge. Affirmed.

Righetti Glugoski, Matthew Righetti and John Glugoski for Defendant and Appellant.

Fisher & Phillips, Lonnie D. Giamela and Jimmie E. Johnson for Plaintiff and Respondent.

\*          \*          \*

Plaintiff and respondent Network Capital Funding Corporation (Network Capital) filed a declaratory relief action alleging its arbitration agreement with defendant and appellant Erik Papke required Papke to arbitrate his wage and hour claims on an individual basis rather than the classwide basis he sought in his pending arbitration proceeding. Papke petitioned the trial court for an order compelling Network Capital to submit its declaratory relief claims to arbitration. According to Papke, the broad language in the parties' arbitration agreement required the arbitrator, not the court, to decide whether the agreement authorized class arbitration. The trial court denied Papke's petition, concluding it must decide whether the arbitration agreement authorized class arbitration, and in doing so found this particular agreement did not allow class arbitration. Papke challenges both these conclusions on appeal.

As explained below, we agree with the trial court. Deciding whether the parties' arbitration agreement authorizes class arbitration does not simply determine what arbitration procedures the parties agreed to use, but rather whose claims the parties agreed to arbitrate. Supreme Court precedent requires courts to decide whose claims are covered by an arbitration agreement unless the parties clearly and unmistakably agree to have the arbitrator decide that question. Because Papke's and Network Capital's arbitration agreement does not clearly and unmistakably designate the arbitrator to determine whether the agreement authorizes class arbitration, we conclude the trial court properly decided that question.

We also conclude the trial court properly determined Papke's and Network Capital's arbitration agreement does not authorize class arbitration. The Supreme Court has held a party may not be compelled to submit to class arbitration absent a contractual basis for concluding the party agreed to class arbitration; a mere agreement to submit all claims to arbitration is not sufficient. Here, the parties' arbitration agreement shows they did not agree to class arbitration. The agreement's broad terms requiring the parties to submit all claims, disputes, and controversies to arbitration, with only a few limited and

2

inapplicable exceptions, fall short of demonstrating a clear agreement to arbitrate class claims.

## I

## FACTS AND PROCEDURAL HISTORY

In October 2011, Network Capital hired Papke as an employee. Papke signed the "Employment Acknowledgment and Agreement" (Arbitration Agreement), which required the parties to "utilize binding arbitration to resolve all disputes that may arise out of or be related to [his] employment in any way." The Arbitration Agreement further states, "Both the Company and I agree that any claim, dispute, and/or controversy that either I may have against the Company . . . , or the Company may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act . . . . Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute . . . , equitable law, or otherwise. The only exception to the requirement of binding arbitration shall be for claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, Employment Development Department Claims, or as may otherwise be required by state or federal law. . . ."

In June 2013, Papke initiated arbitration proceedings against Network Capital by serving a demand for class arbitration. On behalf of all similarly situated current and former employees of Network Capital, Papke's demand alleged wage and hour claims under the Labor Code and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.). Papke later served an amended class arbitration demand adding a representative claim under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698).

3

After receiving Papke's demand, Network Capital told him the Arbitration Agreement did not authorize class arbitration. Network Capital also insisted the trial court must resolve any disagreement over the availability of class arbitration, not the arbitrator. Papke disagreed, arguing the Arbitration Agreement's broad language required the arbitrator to decide all claims, disputes, and controversies between the parties, including whether the Arbitration Agreement authorized class arbitration.

Based on this disagreement, Network Capital sought a judicial declaration that (1) it is the court's responsibility to decide whether the Arbitration Agreement authorized class arbitration, and (2) the Arbitration Agreement prohibited class arbitration. In August 2013, Network Capital sought a preliminary injunction enjoining Papke from seeking any class or representative relief in the pending arbitration proceedings. Papke opposed that motion, demurred to Network Capital's complaint, and petitioned for an order compelling Network Capital to submit their dispute to the arbitrator for resolution.

The trial court heard all three motions at the same time and took the matters under submission. A few days later, the court granted Network Capital the requested preliminary injunction, denied Papke's petition to compel arbitration, and overruled Papke's demurrer. The court explained, "the issue of whether the agreement requires arbitration of class actions is one for the court and the court determines that the agreement allows for the arbitration of Mr. Papke's personal claims, but does not address Mr. Papke asserting the claims of others, including class members." Papke now appeals.

II

DISCUSSION

The ultimate issue in this case is whether the parties' Arbitration Agreement allows Papke to pursue class and representative claims in arbitration, or

4

requires him to arbitrate his claims on an individual basis only (sometimes, Class Arbitration Question). Before we reach that issue, however, we first must determine who decides that question (sometimes, Who Should Decide Question). If it is the arbitrator, we must reverse and remand for the arbitrator to decide the Class Arbitration Question in the first instance. If it is the trial court, only then do we review whether the court properly determined the Arbitration Agreement did not authorize class arbitration.

A.    *Standard of Review and Governing Law*

"'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' [Citation.]" (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) Interpreting a written arbitration agreement is a question of law subject to de novo review when the parties offer no conflicting extrinsic evidence on the document's meaning. (*Ibid.*) Because the parties offered no extrinsic evidence on the meaning of the Arbitration Agreement, we review the trial court's ruling under the de novo standard.

The parties agree the Federal Arbitration Act (9 U.S.C. § 1 et. seq.; FAA) governs the Arbitration Agreement, which expressly states the parties agree to "binding arbitration under the Federal Arbitration Act." (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1121-1122 [arbitration governed by FAA, not California law, when arbitration provision states parties shall arbitrate their dispute "'pursuant to the FAA'"].)

B. *The Trial Court Properly Determined It Must Decide the Class Arbitration Question*

   1. Who Decides the Class Arbitration Question Turns On Whether It Presents an Arbitrability or Procedural Issue

Our analytical starting point is the premise that "[a]rbitration . . . is a matter of consent, not coercion." (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 479; see *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 (*Howsam*) ["'arbitration is a matter of contract'"].) Arbitrators have authority to decide disputes only because the parties agreed in advance to submit their disputes to arbitration. (*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, 683 (*Stolt-Nielsen*); *AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 648-649 (*AT&T Technologies*).)

Arbitration's consensual nature allows the parties to structure their arbitration agreements as they see fit. They may limit the issues to be arbitrated, specify the rules and procedures under which they will arbitrate, designate who will serve as their arbitrator(s), and limit with whom they will arbitrate. (*Stolt-Nielsen*, *supra*, 559 U.S. at p. 683; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740, 1748-1749] (*AT&T Mobility*).) Arbitration's consensual nature also means "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 945 (*First Options*); *Howsam*, *supra*, 537 U.S. at p. 83.)

In the absence of a "'clear[] and unmistakabl[e]'" agreement to the contrary, it is presumed the parties to an arbitration agreement intended the court, rather than the arbitrator, to decide whether they agreed to submit a particular dispute to arbitration. (*Howsam*, *supra*, 537 U.S. at p. 83; *First Options*, *supra*, 514 U.S. at pp. 944-945; *AT&T Technologies*, *supra*, 475 U.S. at p. 649.) These "question[s] of

6

arbitrability" include whether the parties entered into a valid arbitration agreement and whether a concededly binding arbitration agreement applies to a particular dispute. (*Ibid.*)

The United States Supreme Court explained the rationale for this presumption as follows: "[The] question . . . 'who (primarily) should decide arbitrability' . . . is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. [Citations.] And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide. [Citations.]" (*First Option*, *supra*, 514 U.S. at p. 945.)

Questions of arbitrability that are presumptively for courts to decide are limited to a narrow range of gateway issues that "contracting parties would likely have expected a court to have decided . . . ." (*Howsam*, *supra*, 537 U.S. at p. 83.) Courts do not find a question of arbitrability "in other kinds of general circumstances where parties would likely expect that an arbitrator would decide the [question]. Thus, '"procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator to decide. [Citation.] So, too, the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.' [Citation.]" (*Id*. at p. 84, original italics.)

Here, the Arbitration Agreement's express terms do not mention class arbitration nor do they submit arbitrability questions to the arbitrator for resolution. Instead, the Arbitration Agreement simply requires Papke and Network Capital to arbitrate "any claim, dispute, and/or controversy" they have with one another, except for a few specialized claims not applicable here. This ambiguous language is not a clear and

7

unmistakable statement Papke and Network Capital intended the arbitrator to decide whether they agreed to class arbitration. (*Opalinski v. Robert Half Intern., Inc.* (3rd Cir. 2014) 761 F.3d 326, 335 (*Opalinski*) ["express contractual language unambiguously delegating the question of arbitrability to the arbitrator" is required to overcome the presumption courts decide arbitrability questions; "[s]ilence or ambiguous contractual language is insufficient to rebut the presumption"].) Accordingly, who decides the Class Arbitration Question turns on the nature of that question. In other words, is the issue a question of arbitrability for the court or a question of procedure for the arbitrator?

Seeking to reverse the presumption favoring court resolution, Papke contends we must resolve all doubts about arbitrability in favor of arbitration, and therefore any question concerning whether he and Network Capital agreed to class arbitration must be submitted to the arbitrator for resolution. We find this contention unpersuasive because Papke conflates the Who Should Decide Question with the Class Arbitration Question. The FAA's strong policy in favor of enforcing arbitration agreements according to their terms generally requires any doubt concerning the arbitrability of a dispute to be resolved in favor of arbitration, but that presumption only applies to whether a particular dispute is covered by an arbitration agreement, that is, to arbitrability questions. (*Howsam*, *supra*, 537 U.S. at p. 83; *First Options*, *supra*, 514 U.S. at pp. 944-945; *AT&T Technologies*, *supra*, 475 U.S. at p. 650; *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.* (1983) 460 U.S. 1, 24-25 (*Moses*).) That presumption does not apply to the threshold question of who decides whether a particular dispute is covered by an arbitration agreement. (*First Options*, at pp. 944-945.) As explained above, the Supreme Court has held the presumption on the Who Should Decide Question runs in favor of courts: absent a clear and unmistakable agreement to the contrary, it is presumed the parties intended courts, not arbitrators, to decide whether the

8

parties agreed to submit a particular dispute to arbitration.  (*Ibid.*; see *Howsam*, *supra*, 537 U.S. at p. 83; *AT&T Technologies*, *supra*, 475 U.S. at p. 649.)

2.      The Class Arbitration Question is a Question of Arbitrability for the Court

The United States Supreme Court first addressed whether the Class Arbitration Question is a procedural or arbitrability question in *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 (plur. opn. of Breyer, J.) (*Bazzle*).  There, four justices concluded whether the parties' agreement prohibited class arbitration was a procedural question for the arbitrators because it concerned the procedures to be used in arbitrating the parties' dispute, not whether they agreed to arbitration or whether their agreement applied to the underlying dispute.  (*Id*. at pp. 452-453.)  As a plurality opinion by less than a majority of the Court, however, *Bazzle* is not binding precedent.  Indeed, two later Supreme Court cases emphasize, "this Court has not yet decided whether the availability of class arbitration is a question of arbitrability" because *Bazzle* was a plurality opinion.  (*Oxford Health Plans LLC v. Sutter* (2013) 569 U.S. ___, ___, fn. 2 [133 S.Ct. 2064, 2068, fn. 2] (*Oxford*); see *Stolt-Nielsen*, *supra*, 559 U.S. at p. 680.)

Although they unmistakably declared *Bazzle* is not binding precedent, neither *Oxford* nor *Stolt-Nielsen* resolved the Who Should Decide Question because the parties in both cases agreed to have the arbitrator decide the Class Arbitration Question, and therefore the Who Should Decide Question was not before the Court.  (*Oxford*, *supra*, 133 S.Ct. at p. 2068, fn. 2; *Stolt-Nielsen*, *supra*, 559 U.S. at p. 680.)  *Oxford* and *Stolt-Nielsen* nonetheless establish *Bazzle*'s value is limited to the persuasiveness of its rationale.  The United States Supreme Court therefore has not yet resolved the Who Should Decide Question.

The two federal circuits that have confronted the issue rejected *Bazzle* and concluded the Class Arbitration Question is an arbitrability question for courts to decide because it determines whose claims the parties must arbitrate and thereby fundamentally

9

affects both the nature and scope of the parties' arbitration. (*Opalinski*, *supra*, 761 F.3d at pp. 332-335; *Huffman v. Hilltop Companies, LLC* (6th Cir. 2014) 747 F.3d 391, 398-399 (*Huffman*); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett* (6th Cir. 2013) 734 F.3d 594, 597-599 (*Reed Elsevier*).) Several district courts from other circuits, however, have found *Bazzle* persuasive and concluded the Class Arbitration Question is for arbitrators to decide because it determines the procedures the parties will use to arbitrate their dispute. (See, e.g., *In re A2P SMS Antitrust Litigation* (S.D.N.Y. 2014) 2014-1 Trade Cas. (CCH) ¶78,791 [2014 WL 2445756, *10-*12] (*A2P SMS*); *Lee v. JPMorgan Chase & Co.* (C.D. Cal. 2013) 982 F.Supp.2d 1109, 1112-1114 (*Lee*); *Hesse v. Sprint Spectrum L.P.* (W.D. Wa., Feb. 17 2012, No. C06-0592JLR) 2012 WL 529419, *2-*3 (*Hesse*); *Guida v. Home Savings of America, Inc.* (E.D.N.Y. 2011) 793 F.Supp.2d 611, 615-619 (*Guida*).)[1] Two days before oral argument in this case, the Second District Court of Appeal published the first California case to squarely address the issue, and decided it was a procedural question based on *Bazzle*'s rationale.[2] (*Sandquist v. Lebo Automotive, Inc.* (2014) 228 Cal.App.4th 65, 78-79 (*Sandquist*).)

---

[1] In addition to *Bazzle*, these decisions also heavily relied on two Third Circuit Court of Appeals opinions that no longer reflect the law in that circuit. The first, *Vilches v. The Travelers Companies, Inc.* (3rd Cir. 2011) 413 Fed.Appx. 487, is an unpublished opinion that followed *Bazzle* and concluded the Class Arbitration Question is a procedural issue for arbitrators. (*Id.* at pp. 492-493.) The Third Circuit implicitly renounced *Vilches* in *Opalinski* by stating it had not yet decided whether the Class Arbitration Question was an arbitrability or procedural question, and then concluded it posed an arbitrability question. (*Opalinski*, *supra*, 761 F.3d at pp. 331-334.) *Opalinski* does not expressly refer to *Vilches* because *Vilches* is an unpublished opinion. (3rd Cir. Local Appellate Rules, Appendix I, Internal Operating Procedures 5.7.) The second opinion, *Quilloin v. Tenet HealthSystem Philadelphia, Inc.* (3rd Cir. 2012) 673 F.3d 221, included a single sentence stating the Class Arbitration Question is a procedural one for arbitrators. (*Id.* at p. 232.) In *Opalinski*, the Third Circuit explained that sentence in *Quilloin* was unsupported dicta and rejected it by concluding the question was an arbitrability question for the court. (*Opalinski*, at pp. 331-332.)

[2] In *Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297, the Court of Appeal declared arbitrators must decide whether an arbitration agreement prohibits class

10

As explained below, we are not persuaded by *Bazzle* and its rationale for concluding the Class Arbitration Question is a procedural matter for arbitrators, and therefore decline to follow *Bazzle*, *Sandquist*, or similar cases adopting *Bazzle*'s rationale. Instead, we agree with *Opalinski*, *Huffman*, and *Reed Elsevier*, and conclude the Class Arbitration Question is an arbitrability question for courts.

a. Bazzle *and Its Progeny Fail to Establish the Class Arbitration Question is a Procedural Issue for Arbitrators to Decide*

*Bazzle* concluded arbitrators must decide the Class Arbitration Question because it is a procedural inquiry that asks, "what *kind of arbitration proceeding* the parties agreed to. That question . . . concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question. . . . [Accordingly,] this matter of contract interpretation should be for the arbitrator, not the courts, to decide." (*Bazzle*, *supra*, 539 U.S. at pp. 452-453, original italics.) We find this reasoning unpersuasive because the proper standard for identifying procedural questions does not consider the kind of arbitration procedures the parties agreed to or whether the question is a matter of contract interpretation.

As explained above, questions of procedure grow out of the parties' dispute and bear on its final disposition. (*Howsam*, *supra*, 537 U.S. at pp. 83-84; *First Options*, *supra*, 514 U.S. at pp. 944-945; see *Stolt-Nielsen*, *supra*, 559 U.S. at p. 685.) Whether the parties' arbitration agreement authorizes class arbitration does *not* pose a procedural

arbitration. *Garcia* conducted no analysis on the issue, but simply concluded *Bazzle* "mandate[d]" that result. (*Id*. at pp. 302-303.) As explained above, *Bazzle* was a nonbinding plurality decision and both *Stolt-Nielsen* and *Oxford* declared *Bazzle* had not decided whether courts or arbitrators should decide the Class Arbitration Question. Although they did not decide the Who Should Decide Question, two California Court of Appeal decisions have pointed out that *Garcia* did not resolve the issue because it relied on *Bazzle* without analyzing the underlying issue. (*Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 515, fn. 4; *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1129, fn. 6.)

11

question under the above standard because it does not grow out of the parties' underlying dispute and does not bear on the final disposition of their claims. Here, the Class Arbitration Question arises out of an ambiguity in the Arbitration Agreement, not Papke's wage and hour claims against Network Capital. Similarly, the Class Arbitration Question does not bear on the final disposition of Papke's wage and hour claims; he is entitled to continue pursuing those claims regardless of how the Class Arbitration Question is resolved.

The Class Arbitration Question also is not analogous to issues the Supreme Court has found pose a procedural question for arbitrators to decide. For example, whether the parties agreed to arbitrate on an individual or class basis is not analogous to whether the claimant satisfied all prerequisites to arbitration established by the parties' agreement. (*Howsam*, *supra*, 537 U.S. at p. 84, citing *John Wiley & Sons, Inc. v. Livingston* (1964) 376 U.S. 543, 557 (*John Wiley & Sons*) [whether claimant completed first two steps of grievance procedure is procedural question for arbitrator when steps are prerequisite to arbitration].) Similarly, the Class Arbitration Question is not analogous to whether the statute of limitations bars a party's claim or "'allegation[s] of waiver, delay, or a like defense to arbitrability,'" all of which the Supreme Court has found to be procedural matters. (*Howsam*, at pp. 84-85; *Moses*, *supra*, 460 U.S. at pp. 24-25.) Neither *Bazzle* nor any of the cases adopting its rationale provides an explanation or analysis of how the Class Arbitration Question grows out of the parties' underlying dispute or bears on the dispute's final disposition.

Moreover, the Supreme Court has since rejected the conclusion a question is procedural simply because the answer determines the procedures the parties will use to arbitrate their claims.[3] In *Stolt-Nielsen*, the Supreme Court explained the shift from

---

[3] In *Sandquist*, the Court of Appeal determined the Class Arbitration Question was a procedural issue because "a class action is a procedural device." (*Sandquist*, *supra*, 228 Cal.App.4th at p. 78.)

12

individual to class arbitration is not simply a matter of "what 'procedural mode' [i]s available to present [a party's] claims" because that shift fundamentally changes the nature of the arbitration and significantly expands its scope. (*Stolt-Nielsen*, *supra*, 559 U.S. at p. 687; *Opalinski*, *supra*, 761 F.3d at pp. 333-334.) Indeed, the *Stolt-Nielsen* court concluded class arbitration is not a mere procedural device to which parties implicitly agree by entering into an arbitration agreement, but rather a fundamentally different proceeding that requires an explicit or clear basis in the parties' arbitration contract showing they agreed not only to arbitration, but to class arbitration. (*Stolt-Nielsen*, at pp. 685-687.) Similarly, in *AT&T Mobility*, the Court concluded the shift from individual to class arbitration so fundamentally changes the nature and scope of arbitration that any state law or policy requiring class arbitration without an explicit agreement is inconsistent with the consensual nature of arbitration, and therefore the FAA preempts the state law or policy. (*AT&T Mobility, supra*, 131 S.Ct. at pp. 1750-1753.)

The fundamental differences between class and individual arbitration the *Stolt-Nielsen* and *AT&T Mobility* courts identified include the following: (1) class arbitration requires the arbitrator to resolve not a single dispute between the parties to a single agreement, but rather many disputes involving potentially hundreds or thousands of parties (*Stolt-Nielsen*, *supra*, 559 U.S. at p. 686); (2) a class arbitration award adjudicates not only the rights of the parties to the arbitration agreement, but also the rights of absent parties (*ibid*.; *AT&T Mobility*, *supra*, 131 S.Ct. at pp. 1750-1751); (3) class arbitration involves commercial stakes comparable to class action litigation, but the scope of judicial review is much narrower (*Stolt-Nielsen*, at pp. 686-687; *AT&T Mobility*, at p. 1752); (4) class arbitration proceedings are much more formal and do not provide the time and costs savings that typically prompt parties to agree to arbitration (*AT&T Mobility*, at pp. 1751-1752); and (5) the presumption of privacy and

13

confidentiality applicable in individual arbitrations does not apply in class arbitration (*Stolt-Nielsen*, at p. 686; *AT&T Mobility*, at pp. 1750-1751).

*Sandquist* and the district courts that followed *Bazzle* found these fundamental differences between individual and class arbitration to be insignificant because those courts considered the differences to be "more relevant to the issue of whether the parties agreed to class arbitration . . . than to the issue of whether the court or the arbitrator decides if an agreement contemplates class arbitration." (*Sandquist*, *supra*, 228 Cal.App.4th at pp. 78-79; *A2P SMS*, *supra*, 2014 WL 2445756, \*11; *Lee*, *supra*, 982 F.Supp.2d at p. 1114; *Guida*, *supra*, 793 F.Supp.2d at pp. 616, 619.) *Sandquist* and these other cases, however, provide no explanation or analysis to support this conclusion and nonetheless concede the fundamental differences between individual and class arbitration have at least some relevance to deciding whether the Class Arbitration Question is a question of arbitrability or procedure.

We find these fundamental differences to be highly relevant because they show the Class Arbitration Question does not grow out of the parties' dispute itself and does not bear on the dispute's final resolution. Indeed, the differences highlighted in *Stolt-Nielsen* and *AT&T Mobility* are not merely procedural because the issue of whose claims the parties agreed to arbitrate is essentially a question of what the parties agreed to, a gateway issue that determines the scope of the parties' arbitration proceedings.

b.    *How the Class Arbitration Question Affects the Scope of the Arbitration Makes It an Arbitrability Question for the Court*

*Bazzle* found the Class Arbitration Question is not an arbitrability question because it "concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties," and does not ask "whether the parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter." (*Bazzle*, *supra*, 539 U.S. at p. 452, italics omitted.) We are not persuaded by this rationale

14

because the Class Arbitration Question determines whose claims the parties agreed to arbitrate and thereby fundamentally affects the scope of the parties' arbitration.

As explained above, questions of arbitrability concern whether the contracting parties agreed to arbitrate their disputes and the scope of that agreement; they are matters the contracting parties would likely have expected a court to decide. (*Howsam*, *supra*, 537 U.S. at pp. 83-84; *First Options*, *supra*, 514 U.S. at pp. 944-945; see *Stolt-Nielsen*, *supra*, 559 U.S. at p. 685.)  Applying this standard, we conclude the Class Arbitration Question involves the scope of the parties' arbitration agreement because it requires the decisionmaker to determine whose claims the parties agreed to arbitrate—only the named plaintiff's claims against the defendant, or the claims of numerous other absent, but similarly-situated claimants against the defendant. (See *Stolt-Nielsen*, *supra*, 559 U.S. at p. 686; *AT&T Mobility*, *supra*, 131 S.Ct. at pp. 1750-1751.)  Here, the Class Arbitration Question requires the decisionmaker to determine whether Papke and Network Capital's agreement to submit "any claim, dispute, and/or controversy" to binding arbitration covers not only Papke's claims against Network Capital, but also the claims of all similarly situated, past and present employees against Network Capital.[4]

---

[4]     Because the Class Arbitration Question focuses on whose claims the Arbitration Agreement requires Papke and Network Capital to arbitrate, we do not address whether an arbitrator's resolution of that question could require other Network Capital employees to arbitrate their claims against Network Capital or allow Papke to arbitrate the claims on their behalf.  We simply echo the concerns Justice Alito voiced in his concurring opinion in *Oxford*:  "[A]t least where absent class members have not been required to opt *in*, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used." (*Oxford*, *supra*, 133 S.Ct. at pp. 2071-2072 (conc. opn. of Alito, J.).)

We also note this appeal involves the claims of other people that Papke seeks to assert on a class or representative basis rather than a group of people that have all entered into arbitration agreements with Network Capital and seek to join together to pursue their claims against Network Capital in a single arbitration proceeding.  Whether the

15

As the Third Circuit explained in *Opalinski*, "The Supreme Court has long recognized that a district court must determine whose claims an arbitrator is authorized to decide. In *John Wiley & Sons* . . . , the defending company claimed it was not bound by the arbitration provisions of an agreement signed by a company with which it had merged. *Id*. at 546-47. The Court stated that there was 'no doubt' that the issue 'whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court. . . .' *Id*. at 546-47 (internal quotation marks and citations omitted). Similarly, in *First Options* individual business owners argued that they were not personally bound by an arbitration agreement they had signed on behalf of their wholly owned company. *See* 514 U.S. at 941-42. The Court again concluded that this was a 'question of arbitrability' to be presumptively determined by a court absent clear contractual language to the contrary. *Id*. at 946-47. Our Circuit has also held repeatedly that whose claims an arbitrator may decide is an issue for the courts. *See*, *e.g.*, *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 169 (3d Cir.2009) ('[w]hether the arbitrator's award binds [a third-party] is a question that the court must decide'); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir.2000) (determining 'whether Huep's signature bound Advent' was 'a necessary prerequisite to the court's fulfilling its role of determining whether the dispute is one for an arbitrator to decide')." (*Opalinski*, *supra*, 761 F.3d at p. 332.)

We also conclude the Class Arbitration Question is a question of arbitrability because contracting parties would likely and reasonably expect a court to decide the question. Indeed, when the Class Arbitration Question is properly viewed as asking whose claims the parties agreed to arbitrate, allowing the arbitrator to decide the question without clear and unmistakable evidence the parties intended the arbitrator to

Arbitration Agreement authorizes that sort of joinder is not before us and we express no opinion on that question.

decide it "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (*First Options*, *supra*, 514 U.S. at p. 945; see *Howsam*, *supra*, 537 U.S. at pp. 83-84.) Allowing an arbitrator to decide this issue threatens the consensual nature of arbitration and the rule that parties may be compelled to arbitrate only those issues they agreed to arbitrate. (See *First Options*, at p. 945.)

Papke contends *Stolt-Nielsen* and *Oxford* support his position that arbitrators may decide whether the arbitration agreement covers class claims, but Papke flatly misconstrues both of those cases. The portion of *Stolt-Nielsen* Papke cites is merely a summary of the plurality opinion in *Bazzle*, and the court explains a majority of the *Bazzle* court did not resolve whether a court should decide that question. The *Stolt-Nielsen* court did not reach the issue because the parties had stipulated the arbitrators would decide whether to allow representative claims. (*Stolt-Nielsen*, *supra*, 559 U.S. at pp. 678-680.) Similarly, Papke ignores *Oxford*'s express statement it did not resolve the Who Should Decide Question because the parties agreed to submit the Class Arbitration Question to the arbitrator. Papke also ignores that *Oxford* emphasized *Bazzle* was a nonbinding plurality opinion and the Court therefore had not yet resolved whether the court or the arbitrator should decide whether an arbitration agreement authorizes class arbitration. (*Oxford*, *supra*, 133 S.Ct. at p. 2068, fn. 2.)

Citing *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, Papke also contends "the issue whether a case should proceed as an individual action or as a class is a procedural question." Papke, however, misapplies *Linder*, which addressed whether a court could consider an action's merits when deciding a class certification motion. *Linder* did not address arbitration, let alone whether courts or arbitrators should decide the Class Arbitration Question.

Finally, Network Capital contends the California Supreme Court recently decided the Who Should Decide Question in *City of Los Angeles v. Superior Court*

17

(2013) 56 Cal.4th 1086. Not so. In *City of Los Angeles*, the court concluded a dispute concerning the scope of a contractual duty to arbitrate is subject to judicial resolution unless the arbitration agreement expressly provided otherwise. (*Id.* at p. 1093.) That is simply a statement of the rule that courts usually decide arbitrability questions. *City of Los Angeles*, however, did not address whether the Class Arbitration Question is an arbitrability question, and therefore that case does not support Network Capital's position.

C.      *The Trial Court Properly Decided the Parties Did Not Agree to Class Arbitration*

Assuming the Class Arbitration Question was for the court to decide, Papke contends the court erred in concluding the Arbitration Agreement did not authorize class arbitration because the agreement required him and Network Capital to submit "any claim, dispute, and/or controversy" between them to binding arbitration "[i]nclud[ing] . . . all disputes, whether based on tort, contract, statute . . . , equitable law, or otherwise," and "[t]he sole exception is for claims before the [National Labor Relations Board]." Because class arbitration does not fall within the narrow exception the Arbitration Agreement creates to the parties' obligation to submit all claims, disputes, and controversies to arbitration, Papke concludes the agreement must authorize class arbitration. Papke's argument ignores the governing law on the requirements for submitting claims to class arbitration.

In *Stolt-Nielsen*, the Supreme Court held "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." (*Stolt-Nielsen, supra*, 559 U.S. at p. 684, original italics.) The *Stolt-Nielsen* Court did not decide what constituted a sufficient contractual basis for compelling a party to submit to class arbitration because the parties in that case entered into the unusual stipulation that not only was their agreement silent on class arbitration, but they never reached an agreement on class arbitration. (*Ibid.*;

18

see *Oxford*, *supra*, 133 S.Ct. at pp. 2069-2070.)  *Stolt-Nielsen*, however, explained, "An implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate.  This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." (*Stolt-Nielsen*, at p. 685.)

Here, the Arbitration Agreement is silent as to class arbitration because the agreement neither expressly authorizes nor prohibits class arbitration, and therefore Papke must point to some other contractual basis for concluding the parties agreed to class arbitration.  He argues the parties' intent to authorize class arbitration is established by the Arbitration Agreement's broad language requiring the parties to submit "any claim, dispute, and/or controversy" to arbitration and the parties' omission of class arbitration from the narrow list of exceptions to that broad obligation.  Papke, however, fails to point to any extrinsic evidence to support this argument regarding the parties' intent and nothing on the face of the Arbitration Agreement supports this contention.  Without some extrinsic evidence of the parties' intent, Papke's argument is nothing more than an argument the parties implicitly agreed to class arbitration.  As explained above, *Stolt-Nielsen* rejected that contention, and therefore we conclude the trial court properly determined the Arbitration Agreement did not authorize class arbitration.

Papke contends *Stolt-Nielsen* only applies when the parties stipulate they did not reach an agreement on class arbitration.  According to Papke, *Stolt-Nielsen* does not apply here because a dispute exists between him and Network Capital on whether they agreed to class arbitration.  Papke is mistaken.  *Stolt-Nielsen* does not limit its holding to its facts, but rather establishes a generally applicable rule that there must be some contractual basis for compelling a party to submit to class arbitration in addition to an agreement to arbitrate all disputes.  Papke fails to acknowledge *Stolt-Nielsen*'s central

19

holding, and fails to show he and Network Capital agreed to class arbitration in addition to individual arbitration.

## III

### DISPOSITION

The order is affirmed.  Network Capital shall recover its costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

20